1     HONORABLE RONALD B. LEIGHTON

2

3

4

5

6
        UNITED STATES DISTRICT COURT
7       WESTERN DISTRICT OF WASHINGTON
                AT TACOMA
8

9     LARRY C. OCKLETREE,                CASE NO. 11-cv-05836 RBL

                     Plaintiff,          ORDER ON DEFENDANTS'
10                                        MOTION TO DISMISS

11         v.

12    FRANCISCAN HEALTH SYSTEM, et
      al.,
13                   Defendants.

14

15         THIS MATTER is before the Court on Defendant Franciscan Health System ("FHS")'s

16    Motion to Dismiss.  (Dkt. #40).  Plaintiff Larry Ockletree was terminated from his job as a

      security guard at FHS in September, 2010.  Ockletree sued, alleging that his termination
17
      reflected discrimination based on his disability or his race.
18
           FHS moves to dismiss counts I, II, IV, and V of Ockletree's Second Amended
19
      Complaint.  Ockletree's first and second causes of action allege that FHS unlawfully terminated
20
      his employment in violation of the Americans with Disabilities Act ("ADA") and the Civil
21
      Rights Act of 1964 ("Title VII").  His fourth cause of action asserts a wrongful discharge in
22    violation of public policy, and the fifth alleges a violation of the Washington Law Against

23    Discrimination ("WLAD").

24

FHS contends that Ockletree's failure to file a timely administrative charge with the Equal Employment Opportunity Commission forecloses both federal claims.  It argues that Ockletree's public policy claim fails because a statutory remedy exists which supplants the equitable claim.  FHS seeks dismissal of Ockletree's WLAD claim, claiming that as a religious organization it is broadly exempt from that statute.

Ockletree argues that he timely submitted an intake questionnaire to the EEOC (despite the absence of any such record in the EEOC file) and that as a result his Title VII and ADA claims are timely.  Ockletree also argues the WLAD's blanket exemption of religious non-profits is unconstitutional.

## I.      FACTUAL BACKGROUND

FHS employed Ockletree as a Security Officer at St. Joseph's Hospital when he suffered a stroke on March 10, 2010.  Pl.'s Opp. at 2 (Dkt. # 43).  The stroke impaired Ockletree's use of his left arm.  FHS determined that he could not perform the essential functions of his job, with or without accommodation, and it terminated Ockletree's employment on September 10, 2010.  Defs.' Memo in Support at 2 (Dkt. # 40).  On August 25, 2011, Ockletree sued, claiming that his termination was the result of discrimination based on race or disability.  He claims he should have been re-employed in his prior position, or provided reasonable accommodations.  Pl.'s Opp. at 2.

It is undisputed that Ockletree initially contacted the EEOC in mid-October, 2010.  Defs.' Memo in Support at 7; Pl.'s Opp. at 2.  The EEOC file notes reflect that it sent Ockletree an intake questionnaire and referred him to the Department of Labor.  Decl. of Sirinek, Ex. B, EEOC 010 (Dkt. # 41).  Ockletree claims that he mailed the EEOC a signed intake questionnaire around November 5, 2010, although there is no record that the EEOC received a completed intake questionnaire in that time frame.  Decl. of Ockletree at Ex. A (Dkt. # 17).  The EEOC closed Ockletree's file in January, 2011.  Decl. of Sirinek at Ex. B, EEOC 010.

1    On March 19, 2011 Ockletree's attorney submitted a completed intake questionnaire to

2  the EEOC.  Decl. of Ockletree.  It reflected Ockletree's intention to file a charge of

3  discrimination, and authorized the EEOC to investigate.  Decl. of Sirinek at Ex. B, EEOC 028.

4  Ockletree submitted a formal Charge of Discrimination on April 22, 2011.  *Id*. at EEOC 018.

5  Ockletree filed a similar charge with the Tacoma Human Rights and Human Services

6  Department the same day. Defs.' Memo in Support at 5, n. 5.  On June 3, 2011, the EEOC issued

7  Ockletree a "Notice of Right to Sue."  Decl. of Sirinek at Ex. B, EEOC 006.  Ockletree filed his

8  complaint in state court on August 25, 2011.  The case was timely removed to this Court.  (Dkts.

9  # 1, 1-2).

10    FHS now moves to dismiss four of Ockletree's claims: (1) discrimination in violation of

11  the American with Disabilities Act; (2) discrimination in violation of Title VII of the Civil

12  Rights Act of 1964; (3) wrongful discharge in violation of public policy; and (4) violation of

13  Washington's Law Against Discrimination.  Defs.' Memo in Support. at 1.

14    FHS argues that Ockletree did not properly file anything with the EEOC until March 19,

15  2011—189 days after his termination.  It claims that Ockletree's failure to file an intake

16  questionnaire or charge of discrimination within the 180 day statutory timeframe deprives this

17  Court of subject matter jurisdiction over Ockletree's ADA and Title VII claims.  *Id*.  FHS further

18  contends that Ockletree's wrongful discharge in violation of public policy claim should be

19  dismissed because a statutory remedy was available, thereby foreclosing this common law claim

20  for relief.  *Id*. at 10.  Finally, FHS asserts that as a non-profit religious hospital, it is facially

21  exempt from WLAD.  *Id*. at 5.

22    Ockletree maintains that this Court has subject matter jurisdiction because he timely filed

23  his intake questionnaire in November, 2010, and that that document is a sufficient charge of

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 3

1  discrimination under Title VII.  Pl.'s Opp. at 1.  He also suggests that if the Court determines that

2  his filing was untimely, equitable tolling should apply.  *Id*. at 15.

3          Ockletree also argues that because a state agency has jurisdiction over his claim, the

4  filing deadline for his federal claims is 300 days, not 180.  He can succeed on this argument only

5  if WLAD applies to FHS, despite the statute's broad exemption for religious non-profits like

6  FHS.  Ockletree asks the Court to subject FHS to WLAD in two ways.  First, he contends that

7  FHS is estopped from asserting the WLAD exemption because its EEO policy guarantees and

8  assures employees that it will comply with applicable anti-discrimination laws.  *Id*. at 4.

9          Ockletree's second argument is better but more complicated: he claims that WLAD's

10 blanket religious exemption is unconstitutional, under both the Washington and the United States

11 Constitutions.  *Id*. at 6.  Because WLAD's viability under the Washington Constitution is best

12 answered by the Washington Supreme Court, and because that Court has not done so in the

13 context of this case, the issue is certified to the Washington Supreme Court.  Because the

14 outcome of Defendants' Motion with respect to Ockletree's federal and state law discrimination

15 claims depends on the answer, the Motion to Dismiss those claims is DENIED without prejudice,

16 and the case is STAYED pending the Washington Supreme Court's input.

## II.    DISCUSSION

18         FHS moves to dismiss for failure to state a claim for which relief may be granted under

19 Fed. R .Civ. P. 12(b)(6), and for lack of subject matter jurisdiction under Fed. R. Civ. P.

20 12(b)(1).

21         Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

22 theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v.*

23 *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff's complaint must allege

24 facts to state a claim for relief that is plausible on its face.  *See Aschcroft v. Iqbal*, 129 S. Ct.

   1937, 1949 (2009).  A claim has "facial plausibility" when the party seeking relief "pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat a Rule 12(c) motion. *Vazquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3f 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*).

A complaint must be dismissed under Rule 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant). When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

**A.  Title VII and ADA Claims.**

FHS argues that this Court lacks subject matter jurisdiction over Ockletree's Title VII and ADA claims, because the EEOC file demonstrates that Ockletree's intake questionnaire was not filed until March 19, 2011—189 days after his termination, and nine days too late. Defs.' Memo in Support at 4.  Ockletree argues that a charge was timely filed.  Pl.'s Opp. at 14.  He asserts that he submitted a timely intake questionnaire on November 5, 2010, indicating that he intended file a charge of discrimination, and that he understood the EEOC must give FHS information about his charge.  Decl. of Ockletree at Ex. A.

A federal court obtains subject matter jurisdiction over discrimination claims under Title VII when the plaintiff exhausts all administrative remedies.  42 U.S.C. § 2000e-5; *Sommatino v. United States,* 255 F.3d 704, 707 (9th Cir. 2001); *Greenlaw v. Garrett,* 59 F.3d 994, 997 (9th Cir.1995).  A plaintiff exhausts her administrative remedies by timely filing an administrative charge with the EEOC or the appropriate state agency.  42 U.S.C. § 2000e-5(b).  The administrative charge must be filed within 180 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5.  This time period may be extended to 300 days in jurisdictions where the state agency has subject matter jurisdiction over the charge and the aggrieved files a claim with such agency.  *Id.*  The ADA's requirements for filing an administrative charge with the EEOC are identical to those for Title VII.  42 U.S.C. §1201-12203; 42 U.S.C. § 2000e; *Sumner v. Sacred Heart Med. Ctr.*, 2005 W.L. 2415969 (2005).

There are exceptions, and the court may maintain subject matter jurisdiction over a claim even though the administrative charge was not timely.  The failure to file a timely EEOC administrative complaint is "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *See Sommatino*, 255 F.3d at 708;

1   *but see Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("experience teaches that strict

2   adherence to the procedural requirements specified by the legislature is the best guarantee of

3   evenhanded administration of the law.").  The Ninth Circuit requires "substantial compliance

4   with the presentment of discrimination complaints to an appropriate administrative agency" as a

5   jurisdictional prerequisite.  *Sommatino*, 255 F.3d at 708.

6          Although equitable estoppel and equitable tolling can extend the deadline for filing a

7   charge, "equitable remedies are unavailable in federal court when the record shows that no

8   administrative filing was ever made."  *Sommatino*, 255 F.3d at 711 (citing *Ross v. United States

9   Postal Serv.*, 696 F.2d 720, 722 (9th Cir. 1983)). Equitable tolling is generally applied "to excuse

10  a claimant's failure to comply with the time limitations where she had neither actual nor

11  constructive notice of the filing period." *Johnson v. Henderson,* 314 F.3d 409, 414 (9th Cir.2002)

12  (citation omitted).  Thus, the focus in equitable tolling is on the reasonableness of a plaintiff's

13  delay: "If a reasonable plaintiff would not have known of the existence of a possible claim within

14  the limitations period, then equitable tolling will serve to extend the statute of limitations for

15  filing suit until the plaintiff can gather what information [she] needs." *Id.* (citing *Santa Maria v.

16  Pacific Bell,* 202 F.3d 1170, 1178 (9th Cir.2000)).  The filing deadline may be equitably tolled

17  when a claimant actively pursued his remedies, but filed a defective pleading during the statutory

18  period. *Irwin v. Dep't. of Veteran Affairs*, 498 U.S. 89, 96 (1990).

19         The court construes employment discrimination charges liberally.  *Id.*  Forms such as an

20  intake questionnaire may be construed as a discrimination charge.  "Since laypersons initiate the

21  administrative process for resolving employment discrimination complaints, the procedural

22  requirements for Title VII actions are "neither interpreted too technically nor applied too

23  mechanically."  *Greenlaw*, 59 F.3d at 999 (citing *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir.

24

1   1981).  The charge must at least notify the agency that employment discrimination is claimed.

2   *Sommatino*, 255 F.3d at 708.

3          A charge of discrimination is sufficient when the EEOC "receives from the person

4   making the charge a written statement sufficiently precise to identify the parties, and to describe

5   generally the action or practices complained of."  16 CFR 1601.12(b).  Yet "regulations do not

6   identify all necessary components of a charge…"  *Federal Exp. Corp. v. Holowecki*, 552 U.S.

7   389, 397 (2008).  "In addition to the information required by the regulations, *i.e.*, an allegation

8   and the name of the charged party, if a filing is to be deemed a charge it must be reasonably

9   construed as a request for the agency to take remedial action to protect the employee's rights or

10  otherwise settle a dispute between the employer and employee."  *Id*. at 402.  The intake

11  questionnaire, accompanied by the employee's request of the EEOC to take action, was

12  sufficient for the Commission to determine that the employee's submissions constituted a charge.

13  *Id*. at 407.

14         Equitable tolling is reserved for circumstances where the delay in filing was due to

15  circumstances beyond the Plaintiff's control, and it does not apply in this case.  Ockletree filed a

16  second intake questionnaire, demonstrating that he had the ability to timely file a charge of

17  discrimination.  There is nothing in the record to support the claim that Ockletree could not have

18  contacted counsel sooner and/or submitted an intake questionnaire or a charge of discrimination

19  before the 180 day deadline.

20         While the filing deadline is not equitably tolled, a question of fact remains regarding

21  Ockletree's first intake questionnaire.  If Ockletree did file the initial intake questionnaire, it was

22  timely filed and sufficient to constitute a charge of discrimination.  Ockletree claims that he

23

24

submitted his intake questionnaire in November 2010, but the EEOC has no record[1] of any such filing.  Whether he submitted an intake questionnaire remains a disputed question of fact.

The intake questionnaire is a sufficient charge of discrimination under 16 CFR 1601.12(b).  It provides FHS ample information to identify the parties and generally the action complained of which plaintiff complains.  *See Federal Exp. Corp.*, 552 U.S. at 402.  Ockletree indicated that he sought to file a charge of discrimination, and that he understood that the EEOC must contact the employer to investigate.  Decl. of Ockletree at Ex. A.

Viewed in the light most favorable to Ockletree, the evidence supports a finding that he timely filed this intake questionnaire in November 2010.  The Court cannot determine as a matter of law that he did not do so.

Furthermore, and in any event, it is not clear that the filing deadline applicable to Ockletree's EEOC filing is 180 days.  When a local or state agency also has jurisdiction over the plaintiff's claims, plaintiff has 300 days to file a charge of discrimination.  42 U.S.C. § 2000e-5(e).  FHS argues that no local agency has jurisdiction, because FHS is exempt from the WLAD.  Therefore, it claims, the applicable deadline is 180 days, not 300.

If FHS is not exempt from the WLAD, a local agency—the Tacoma Human Rights and Human Services Department—appears to have jurisdiction and the 300 day filing deadline would apply.  Ockletree's March 2011 intake questionnaire and the charge of discrimination were filed 189 days and 225 days, respectively, after the alleged discrimination.  *See* Defs.' Memo in Supp. at 6.

---

[1] Ockletree's position is undermined by the fact that, when he completed an intake questionnaire in March, 2011, he marked the box indicating he had not yet submitted a charge of discrimination.  However, some ambiguity remains because the form he claimed to have submitted was labeled an intake questionnaire, and not a charge of discrimination.  *See* Decl. Ockletree at Ex. A-B.

1    Therefore, even if Ockletree did not file an intake questionnaire in November, this

2    Court's jurisdiction over Ockletree's Title VII and ADA claims depends (oddly enough) on

3    whether the WLAD applies, making the filing deadline 300 days.

4    Because the Court is certifying the previously unanswered question of WLAD's

5    constitutionality under the Washington State Constitution to the Washington Supreme Court, the

6    Defendants' motion to dismiss with respect to these claims is denied without prejudice.  This

7    issue is discussed below.

8    **B.  Washington Law Against Discrimination Claim.**

9    FHS claims that as a religious non-profit entity, it is exempt from WLAD, and that

10    Ockletree's WLAD claim should be dismissed.  Defs.' Memo in Supp. at 5.  The WLAD

11    exempts religious non-profit organizations from its reach by expressly excluding them from its

12    definition of "employer": "Employer includes any person acting in the interest of an employer,

13    directly or indirectly, who employs eight or more persons, and *does not include any religious or*

14    *sectarian organization not organized for private profit*."  Wash. Rev. Code 49.60.040(11)

15    (emphasis added).  This exception is much broader than the parallel federal exemption contained

16    in 42 U.S.C. §2000e-1(a):

17        This subchapter shall not apply to an employer with respect to … a religious corporation,
18        association, educational institution, or society with respect to the employment of
           individuals of a particular religion to perform work connected with the carrying on by
19        such corporation, association, educational institution, or society of its activities.

20    FHS does not claim that it terminated Ockletree for any reason related to its religious

21    activity; it simply claims that its status as religious non-profit organization exempts it from

22    WLAD.  Ockletree opposes this position in two ways.

23    First, Ockletree argues that FHS is estopped from asserting the exemption.  Pl.'s Opp. at

24    4.  Ockletree cites *French v. Providence Everett Med. Ctr.*, No. C07-0217 RSL, 2008 WL

1   4186538, 7 (W.D. Wash. 2008) for the proposition that FHS should be estopped because its

2   written EEO policy guaranteed Ockletree an expectation of equal opportunity and non-

3   discrimination.

4          "Equitable estoppel has three elements: (1) an admission, statement, or act inconsistent

5   with the claim afterwards asserted, (2) action by the other party on the faith of such admission,

6   statement, or act, and (3) injury to such other party resulting from allowing the first party to

7   contradict or repudiate such admission, statement, or act." *Farnam v. CRISTA Ministries*, 116

8   Wash.2d 659, 678-79 (1991) (internal citations omitted).[2]  "Estoppel focuses on the justified

9   reliance of a person asserting it." *Id*.

10         In *French*, Providence Everett Medical Center (PEMC) had an EEO policy which

11  specifically stated that PEMC would not discriminate on any basis prohibited by state law.  2008

12  WL 4186538 at 8.  Judge Lasnik found that "[t]he statement is not qualified by 'as applicable.'"

13  *Id*.  The absence of this statement contributed to the reasonableness of the plaintiff's reliance on

14  the statement that PEMC would comply with local and state laws.  *Id*.  Therefore, PEMC was

15  estopped from asserting WLAD's religious exemption.  *Id*.

16         FHS' EEO policy is not as broad as the one at issue in *French*.  It requires compliance

17  with the Americans With Disabilities Act, but with limitation: "Other applicable law may

18  supersede this policy in some instances."  Defs.' Reply at 4.  Unlike PEMC, FHS is not estopped

19  from asserting the religious exemption because it s written policy cannot be construed as a

20  promise that that it would not assert the exemption.

21  ───────────────────

22         [2] The *French* court articulated a slightly different test for when a party is subject to
    estoppel: "(1) the party to be estopped knows the facts; (2) he intends that his conduct shall be
23  acted on or so acts that the party asserting the estoppel has a right to believe it is so intended; (3)
    the latter is ignorant of the true facts; and (4) he relies on the former's conduct to his injury."
24  *French*, 2008 WL 4186538 at 7.

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 11

1    Ockletree's second argument about WLAD's applicability is more difficult.  He argues

2    WLAD religious exemption is unconstitutional under both state and federal Constitutions.  Pl.'s

3    Opp. at 6.  Ockletree argues that the exemption is unconstitutional under the state Constitutions'

4    privileges and immunities clause (Wash. Const. art. 1, sec. 12) and its religious freedom clause,

5    (Wash. Const. art. 1, sec. 11).  He also challenges the exemption under the United States

6    Constitution's equal protection and the establishment clauses.  FHS asks the Court to abstain

7    from rendering an opinion on this issue, and, if it will not, to determine that the exemption is

8    constitutional.

9        Several courts have discussed the constitutionality of WLAD's exemption for religious

10   non-profits, but none has specifically addressed the issue presented here.  The statute's

11   constitutionality remains an open question.  *See French*, 2008 WL 4186538 at 7 ("The issue is an

12   open one in Washington.").  At least one court avoided the question by determining that the

13   entity at issue was not really a religious one.  *Hazen v. Catholic Credit Union*, 37 Wash.App.

14   502, 507 (Div. 3 1984).  In *Erdman v. Chapel Hill Presbyterian Church*, 156 Wash. App. 827,

15   850 (Div. 2 2010); *rev'd* _ Wash.2d _, 286 P.3d 357 (2012), the constitutional question was

16   avoided because alleged discrimination related directly to the church's religious activities.

17   Another case questioned the exemption's constitutionality but declined to reach the issue because

18   of inadequate briefing. *Halle v. Providence Health & Servs.-Wash.*, NO. C10-354 MJP, 2010

19   WL 3259699 at *2 (W.D. Wash. 2010).

20       Washington courts have cited *Farnam* for the proposition that the exemption is

21   constitutional, *See Erdman v. Chapel Hill Presbyterian Church*, 156 Wash. App. 827, 849 (Div.

22   2 2010), but the Supreme Court expressly declined to reach the exemption's constitutionality

23   under the privileges and immunities clause.  116 Wash.2d at 681.

24

1    Furthermore, there are no cases construing the religious exemption in the context of this

2    case, where the alleged discrimination has nothing to do with any religious purpose or activity.

3    For example, the plaintiff in a suit against a religious hospital for discrimination raised the

4    constitutionality of the religious exemption under the establishment clause and the equal

5    protection clause for the first time on appeal. *Harris v. Providence Everett Med. Ctr.*, No.

6    65167-6-I, 161 Wash. App. 1039, *2 (Div. 1 2011) (unreported).  The court of appeals declined

7    to address the constitutionality because the issue was not raised below. *Id.* at *5.

8    In *Donelson v. Providence Health & Servs.-Wash.*, 823 F.Supp.2d 1179, 1187 (E.D.

9    Wash 2011), the Eastern District recognized that several Washington opinions either do not

10   reach the religious freedom argument at all, or address the constitutionality of the exemption

11   under a provision other than article 1 section 11 of the Washington State Constitution.  823

12   F.Supp.2d at 1187.  Indeed, the *Donelson* Court intended to certify the question to the

13   Washington Supreme Court to decide the matter, but the case settled before it could do so. *Id.*

14   It is not clear that the privileges and immunities argument (article 1, section 12) was even raised

15   in that case.

16   In *Hazen*, a Washington Court of Appeals recognized that the exemption might have

17   federal constitutional problems if it was used to excuse discrimination on a basis other than

18   religion: "[P]ermitting a religious organization to discriminate on any basis, other than religion,

19   may violate the equal protection and establishment clauses of the United States Constitution."

20   37 Wash. App. at 507. *See also Hosana-Tabor v. EEOC et. al.*, 132 S.Ct. 694 (2012) (the federal

21   ministerial exemption upheld when the church terminated a minister for conduct related to the

22   ministerial function of the church.)

23

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 13

1    The discrimination Ockletree claims (race and disability) is wholly unrelated to FHS'

2    religious purpose, practice, or activity.  It is not clear to this Court that WLAD's broad

3    exemption is constitutional, at least in this context.  Accordingly, this Court has certified this

4    question to the Washington Supreme Court under Wash. Rev. Code 2.60.020, in a separate

5    Order.  Defendants' Motion to Dismiss Ockletree's federal discrimination claims and his state

6    law WLAD claim are DENIED WITHOUT PREJUDICE pending the Supreme Court's

7    response.

8    **C.  Wrongful Termination in Violation of Public Policy Claim.**

9    FHS seeks dismissal of Ockletree's wrongful discharge in violation of public policy

10   claim, arguing that it fails as a matter of law because there is a statutory remedy for the actions

11   which Ockletree asserts offended public policy. Defs.' Memo in Supp. at 10.  Under Washington

12   law, the tort of wrongful discharge in violation of public policy is a narrow exception to the

13   employment at-will doctrine.  *Sedlacek v. Hillis*, 145 Wash.2d 379, 385 (2001) (citing *Thompson*

14   *v. St. Regis Paper Co.*, 101 Wash.2d 219, 232 (1984)).  To succeed, plaintiffs must prove: "(1)

15   the existence of a clear public policy (the *clarity* element); (2) that discouraging the conduct in

16   which [the plaintiff] engaged would jeopardize the public policy (the *jeopardy* element); (3) that

17   the public-policy-linked conduct caused the dismissal (the *causation* element); and finally (4)

18   that the defendant has not offered an overriding justification for the dismissal (the *absence of*

19   *justification* element)."  *Chudney v. Alsco, Inc.*, 172 Wash.2d 524, 529 (2011) (internal citations

20   omitted).  This exception is "utilized in instances where application of the terminable at will

21   doctrine would have lead to a result clearly inconsistent with a stated public policy and the

22   community interest it advances."  *Thompson*, 101 Wash.2d at 231.

23

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 14

1    A plaintiff cannot maintain such a claim if "current laws and regulations provide an

2  adequate means of promoting public policies…"  *Id*. at 530.  *See Hubbard v. Spokane Cnty*., 146

3  Wash.2d 699, 713 (2002).  "The other means of promoting the public policy need not be

4  available to a particular individual so long as the other means are adequate to safeguard the

5  public policy."  *Hubbard*, 146 Wash.2d at 717.  *See Jones v. Rabanco, Ltd.*, 439 F. Supp. 2d

6  1149. 1166 (2006) (plaintiff's public policy tort claim was dismissed because the WLAD,

7  although making a strong public policy statement against racial discrimination, provides an

8  adequate avenue for recovery); *Armijo v. Yakima HMA, LLC.*, _ F. Supp. 2d _, No. 11-CV-

9  03114-TOR, 2012 WL 1205867, at *2 (E.D. Wash. April 11, 2012) (dismissing a claim for

10  wrongful termination in violation of public policy when the WLAD protected the public policy

11  being violated and no additional jeopardy not protected by the statutes allegedly violated).

12  "Protecting the public is the policy that must be promoted, not the employee's individual

13  interests."  *Rose v. Anderson Hay & Grain Co.*, 168 Wash. App. 474, 478 (2012).

14    Ockletree cannot demonstrate the violation of a public policy which has not already been

15  protected by statute.  Title VII and the ADA are designed specifically to protect the public policy

16  against discrimination.  *Rose* emphasizes that the issue is not whether a remedy is available to

17  the individual, but whether the statue adequately protects a public interest.  The public policy

18  against discrimination remains protected by statute even when a plaintiff fails to timely preserve

19  his claim.  Because this public interest against discrimination is adequately protected by federal

20  statutes, FHS' Motion to Dismiss Ockletree's termination in violation of public policy claim is

21  GRANTED and that claim is DISMISSED.

22

23

24

1

### III.    CONCLUSION

2

3      FHS' Motion to Dismiss (Dkt. # 39) is DENIED in part and GRANTED in part. FHS'

4   Motion to Dismiss Ockletree's federal claims is DENIED.  The Motion to Dismiss Ockletree's

5   wrongful termination in violation of public policy claim is GRANTED and that claim is

6   DISMISSED with prejudice.  FHS' Motion to Dismiss Ockletree's WLAD claims is DENIED

7   without prejudice, and the constitutionality of that statute is certified to the Washington Supreme

8   Court in a separate Order.

9

10     IT IS SO ORDERED.

11     DATED this 11th day of December, 2012

12

13

14

Ronald B. Leighton
United States District Judge

15

16

17

18

19

20

21

22

23

24